OPINION
{¶ 1} Defendant-Appellant, Derrick L. Burrell, appeals the judgment of the Allen County Court of Common Pleas convicting him of an odometer disclosure violation. On appeal, Burrell argues that the trial court failed to apply the exception to strict liability that is contained in R.C. 4549.46(A). Based on the following, we affirm the judgment of the trial court.
 {¶ 2} In December 2006, the Allen County Grand Jury indicted Burrell for one count of failing to provide a true and complete odometer disclosure in violation of R.C. 4549.46(A), a felony of the fourth degree. Subsequently, Burrell entered a plea of not guilty.
 {¶ 3} In May 2007, the case proceeded to a bench trial during which the following testimony was heard concerning the odometer disclosure charge.
 {¶ 4} Derrick Burrell owned Burrell Auto Sales in Lima and had been in the business of selling vehicles for approximately fourteen years. Sandra Courtney testified that, in the spring of 2006, she purchased a 1996 Honda Prelude from Burrell as a gift for her sixteen year-old granddaughter, Adrian Bowersock; that she paid $6,000 for the Prelude; and that she never had any discussion with Burrell about the fact that the odometer reading was inaccurate.
 {¶ 5} The granddaughter, Adrian Bowersock, testified that when Burrell filled out the purchase order and the paperwork for the assignment of ownership, *Page 3 
both documents indicated that the Prelude had 130,861 miles on the odometer; that, when she eventually received the title, more than six weeks after she had acquired the vehicle, the title certificate indicated the Prelude was a rebuilt salvage vehicle; that the mileage was "non-actual"; and, that there was an odometer discrepancy. Bowersock also testified that Burrell had never told her beforehand that the vehicle's odometer was inaccurate or that the Prelude was a rebuilt salvage vehicle.[1]
 {¶ 6} Bowersock testified that when she picked up the vehicle in mid-April, she signed paperwork that had already been filled out by Burrell. The title transfer odometer certification admitted into evidence showed that Burrell certified that the odometer mileage was 130,861, but there was no check mark in the box that stated: "The odometer reading is not the actual mileage. WARNING — Odometer Discrepancy." (State's Exhibit 1). On April 13, 2006, Burrell and Bowersock also signed another document, an odometer disclosure statement, that did have an "X" in the box indicating an odometer discrepancy, but Bowersock testified that she did not remember whether that box was marked at the time she signed it.
 {¶ 7} Trooper Bryan Cupp of the Ohio State Highway Patrol testified that a rebuilt salvage vehicle is usually a vehicle that has been wrecked and then *Page 4 
repaired; that such a vehicle is initially classified as a "salvage" vehicle; that after it is repaired, an individual wishing to resell the vehicle must apply for a "rebuilt salvage" vehicle title; and, the Ohio State Highway Patrol must inspect the vehicle. Trooper Cupp further testified that in conjunction with the inspection, the person wishing to obtain the rebuilt salvage vehicle title must present all of the documents and receipts for any major component parts that have been replaced on the car; and, that an odometer is considered a major component part.
 {¶ 8} Trooper Cupp testified further that Burrell brought the 1996 Prelude to him for such an inspection on May 31, 1996; that Burrell presented paperwork indicating that the only major components parts of the Prelude that had been replaced were the windshield, the left front door, and the left corner panel; that on that date, the vehicle's odometer reflected mileage of 131,438; and, that during the inspection, Burrell never indicated in any way that the odometer had been repaired, replaced, or changed. Trooper Cupp explained that, if an odometer is replaced in a vehicle, the law requires that a sticker must be placed in the door to indicate that the odometer in the vehicle is not the original and that the Prelude did not have such a sticker.
 {¶ 9} Bowersock testified that shortly after she obtained the Prelude, problems arose with the vehicle and she eventually learned that it had been a *Page 5 
salvage vehicle. Courtney's attorney lodged a complaint with the Bureau of Motor Vehicles.
 {¶ 10} Investigator Melody Price of the Bureau of Motor Vehicles testified that, as a result of the complaint, she began to check into the sale of the vehicle; that she investigated the Prelude's chain of title and discovered that the title had been transferred five times since the beginning of 2006; that Burrell was involved in three of those five transfers; and, that, during the transfers that occurred while the Prelude was in Burrell's possession, the stated mileage on the titles changed dramatically.
 {¶ 11} The copies of the titles and transfer documents that were introduced into evidence at the trial showed the following chain of events:

Title Dated Transaction Reflected Type Mileage
01/30/2006 Prior owner transferred title to Progressive Salvage 238,173
 Insurance and it was now classified as Actual
 salvage
02/13/2006 Progressive Insurance assigned ownership Salvage 238,173
 to Perry Auto (on 02/06/06) Actual
02/23/2006 Burrell Auto Sales obtained the Prelude Salvage 88,174
 from Perry Auto (on 02/20/06) Non-Actual
05/31/2006 Burrell filed to obtain a new title changing Rebuilt 131,438
 the vehicle's designation from salvage Salvage Non-Actual
 to rebuilt salvage after the Prelude was
 inspected by the highway patrol.
06/01/2006 Burrell assigned ownership to Adrian Rebuilt 130,861
 Bowersock Salvage Non-Actual
 *Page 6 
(State's Exhibits 1-4).
 {¶ 12} Investigator Price further testified that she contacted Burrell and confronted him with the discrepancy in the paperwork that showed that the odometer mileage had jumped around while the car had been in his ownership; that she showed Burrell the copies of the titles with the vehicle's odometer history; and that she asked him how a vehicle could go from two hundred and thirty-eight thousand miles down to approximately eighty-eight thousand miles. The exhibit evidencing the title transfer of the Prelude from Perry Auto to Burrell clearly indicated on the front of the title that the vehicle had 238,173 actual mileage, but on the back of the title, where the assignment of ownership was recorded, the odometer mileage was hand-written as 88,174 non-actual mileage.
 {¶ 13} Investigator Price testified that Burrell acknowledged that he was the person who wrote the entry on the title transfer from Perry Auto as to the 88,174 miles; that when asked to explain, he indicated it might have been an oversight; and that he stated he may have gotten the mileage mixed up with some other vehicle on his lot. Investigator Price then testified that when she questioned Burrell as to why the mileage changed again from the stated 88,174 to approximately 131,000 when he sold the vehicle a few months later, he did not offer any response or explanation. Inspector Price stated that it was her opinion, *Page 7 
based on her observations and photographs, that the odometer had probably been replaced.
 {¶ 14} Thereafter, the trial court convicted[2] Burrell for failing to provide a true and complete odometer disclosure, stating:
 The court found beyond a reasonable doubt in this particular case, Mr. Burrell, that you could make the proper certification. You made a certification of mileage. You are a dealer. And the issue is, [does] checking a box excuse you from what you know to be the facts? You knew that [sic] the mileage was, the court finds. The car had two hundred and thirty-eight thousand miles on it. You knew that when you bought it.
 Further — and you had the vehicle. You had paperwork. You had sole possession of it and/or your agents. That's who you were responsible for.
 * * *
 Further, there was no sticker on the door as required. All those factors together and the evidence, that's the reason the court, based upon — as fact finder and after due deliberation, found beyond a reasonable doubt [Burrell] is guilty of the charge.
(Trial Tr. pp. 137-139).
 {¶ 15} In June 2007, the trial court sentenced Burrell to two years of community control and ordered him to pay Courtney $6,470 restitution for the cost of the vehicle, plus the cost of insurance and attorney's fees.
 {¶ 16} It is from this judgment that Burrell appeals, presenting the following assignment of error for our review. *Page 8 
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT HEREIN BY FAILING TO APPLY THE EXCEPTION TO STRICT LIABILITY AS CONTAINED IN THE SECOND SENTENCE OF O.R.C. 4549.46(A).
 {¶ 17} In his sole assignment of error, Burrell argues that the trial court erred by failing to apply the exception to strict liability contained in R.C. 4549.46(A). Specifically, Burrell argues that the odometer reading was incorrect due to a previous owner's violation, making the strict liability standard inapplicable. Additionally, Burrell raises within this assignment of error arguments that his conviction was against the manifest weight of the evidence and that the trial court mistakenly applied the "sticker on the door" requirement, as mandated by R.C. 4549.42, to the facts of this case. While these arguments should have been raised as separate assignments of error, we elect to address them in the interest of justice.
 {¶ 18} First, Burrell claims that the trial court erred by applying the strict liability standard that is applicable to one who transfers a vehicle and does not provide a true and correct odometer reading. Specifically, he argues that if the odometer reading is incorrect due to a previous owner's violation, then the transferor is only guilty if the he knew of the violation or recklessly disregarded facts indicating that there was a violation.
 {¶ 19} Burrell was convicted of violating R.C. 4549.46(A), providing: *Page 9 
 No transferor shall fail to provide the true and complete odometer disclosures required by section 4505.06 of the Revised Code. The transferor of a motor vehicle is not in violation of this division requiring a true odometer reading if the odometer reading is incorrect due to a previous owner's violation of any of the provisions contained in sections 4549.42 to 4549.46 of the Revised Code, unless the transferor knows of or recklessly disregards facts indicating the violation.
R.C. 4549.46(A) is part of the Ohio Odometer Rollback and Disclosure Act, encompassing R.C. 4549.41 through R.C. 4549.52, which is a consumer protection statute intended to prohibit deceptive and unconscionable acts by automobile dealers. Celebrezze v. Hughes (1985),18 Ohio St.3d 71, 72. The several sections of the Act address various offenses, including but not limited to: tampering with an odometer; odometer repairs; sale of a vehicle with a tampered odometer; and, the section under which Burrell was indicted, failing to provide true and complete odometer disclosures. In discussing the purpose and public policy behind the Act, this Court has stated, "[c]learly, in enacting the Odometer Rollback and Disclosure Act * * * the General Assembly intended to prohibit car dealers such as defendant from making representations about mileage with knowledge of falsity or in reckless disregard of their truth. Prevention of fraudulent misrepresentation in the transfer of automobiles obviously underlies the entire act[.] * * *" Trans GulfGroup, Inc. v. Toad's Used Cars (1994), 3d Dist. No. 5-94-6,1994 WL 530679. *Page 10 
 {¶ 20} It has long been recognized that the first sentence of R.C.4549.46 imposes strict liability because no culpable mental state is attached to the duty to disclose. Flint v. Ohio Bell Tel. Co. (1982),2 Ohio App.3d 136, 137 (modified by statute as described below). The second sentence of R.C. 4549.46 provides an exception to strict liability where the inaccurate odometer was due to a previous owner's violation, unless it could be shown that the transferor had actual knowledge of the violation. Prickett v. The Foreign Exchange (1990),68 Ohio App.3d 236, 239. In 1987, the General Assembly amended the previous version of the statute by adding the language concerning reckless disregard of the facts. Moon v. Miller (1991), 77 Ohio App.3d 157, 160. Accordingly, the second sentence of the current version of the statute provides that the transferor can be liable if he had actual knowledge or if he recklessly disregarded facts indicating an inaccurate mileage representation by a previous owner.
 {¶ 21} However, in order to avail oneself of the affirmative defense in the second part of the statute, the transferor must first establish that a previous owner was responsible for the incorrect odometer reading and then show that he neither knew of the violation, nor recklessly disregarded facts indicating that such a violation existed. Ragland v.Dumm (1993), 4th Dist. No. 92CA1915, 1993 WL 415527. "`While the second sentence of R.C. 4549.46 does provide an exception to the first, the second sentence does not dilute the import of the first sentencein *Page 11 the absence of facts triggering application of the second sentence.
(Emphasis added).'" Hughes v. Miller (1991), 72 Ohio App.3d 633, 637, quoting Hammock v. Lozan (1987), 2d Dist. No. CA 9939, 1987 WL 7048.
 {¶ 22} Here, while the evidence indicated that the first incorrect odometer recording occurred when the vehicle transferred from Perry Auto to Burrell, no testimony or evidence was presented that implicated the previous owner, Perry Auto, as the party responsible for the inaccurate odometer statement.[3] According to the uncontested testimony at trial, it was Burrell himself who recorded the 88,174 mileage on the title transfer odometer certification. Therefore, there was never any reason to apply the exception to strict liability. Burrell knew, or should have known, what the correct actual mileage was, and he had to have known that the mileage he was certifying when he sold the vehicle was incorrect. All he had to do was turn the title document over because on the front side of the title, the vehicle's actual mileage was stated as 238,173. The information he needed to correctly certify the title was right before him on the face of the title he received from Perry Auto. *Page 12 
 {¶ 23} The next two times Burrell transferred the title, in order to obtain a rebuilt salvage title and upon the sale to Bowersock, he certified the mileage as being approximately one hundred thirty-one thousand miles. Again, all he had to do was look at the front of the previous title to realize that there was another improbable discrepancy. Burrell had to have logically known that it was impossible for the mileage to have changed from approximately 88,000 to now more than 130,000 in a few months. Even if the drastic changes in the mileage were not made for the purpose of deception, then as an automobile dealer, he had a responsibility to make some effort to state the correct mileage where the ability to ascertain the actual mileage and the facts pertaining to the modifications were readily available to him. SeeRagland v. Dumm (1994), 4th Dist. No. 94CA2012, 1994 WL 725136.
 {¶ 24} Accordingly, the trial court did not err in failing to apply the exception to strict liability as contained in the second sentence of R.C. 4549.46(A) because Burrell presented no evidence suggesting that a previous owner was the party responsible for the odometer misrepresentation. Moreover, even if there would have been any evidence that the previous owner was responsible for the change in the mileage, the exception would still have been inapplicable because the facts overwhelmingly demonstrated that Burrell knew of, or recklessly disregarded the facts indicating a violation. *Page 13 
 {¶ 25} Burrell further argues that he did not misrepresent the mileage because the title disclosed that there was an odometer discrepancy and that the mileage listed was not the actual mileage. However, Courtney and Bowersock testified that they did not receive the title or see the mileage discrepancy notation until more than six weeks after they had purchased the vehicle; that Burrell never disclosed that the Prelude's odometer was inaccurate when they were considering the purchase; that two of the three documents that Burrell presented to Bowersock to sign before she took possession of the automobile indicated a mileage of 130,861 and did not contain any odometer warning or disclaimer; and, that, on the one odometer statement that did have the odometer discrepancy box checked, Bowersock did not remember the box being checked when she signed it.
 {¶ 26} Accordingly, the trial court rightfully determined that, whether or not a disclaimer was included, Burrell knew or should have known the actual mileage and he failed to provide the true and complete odometer disclosures as required by the Odometer Rollback and Disclosure Act. The mileage discrepancy notation does not exist in order to allow a seller to purposefully or recklessly misrepresent the mileage and then be absolved of any responsibility by simply checking a box stating that it is the non-actual mileage. When the actual mileage is known, the transferor has an obligation under R.C. 4549.46 to disclose the correct mileage. *Page 14 
 {¶ 27} Accordingly, we find that the trial court did not err in failing to apply the exception to strict liability.
 {¶ 28} Next, Burrell contends that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 29} When an appellate court analyzes a conviction under the manifest weight standard it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the fact finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.
 {¶ 30} As discussed above, the testimony and exhibits presented at trial showed that the vehicle's title was listed as 238,173 actual miles when Burrell received it; that Burrell himself changed the mileage designation to 88,174 non-actual miles when he applied for the title; that he claimed the mileage was approximately 131,000 when he prepared the paperwork selling the vehicle to Courtney and Bowersock; that Burrell never informed Courtney and Bowersock of any discrepancy between the vehicle's actual mileage and the odometer reading; *Page 15 
and, that on at least two of the three documents that listed the mileage as approximately 131,000, there was no warning of any odometer inaccuracy.
 {¶ 31} Therefore, after viewing the evidence presented in a light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that Burrell was guilty of failing to provide true and complete odometer disclosures.
 {¶ 32} Finally, Burrell asserts that the trial court mistakenly applied the "sticker on the door" requirement as mandated by R.C.4549.42 to the facts of this case. We presume Burrell is referring to the trial court's comment that there was no sticker to indicate the odometer was replaced or repaired. The record does not support this allegation.
 {¶ 33} The pertinent sections of R.C. 4549.42 state:
 No person shall adjust, alter, change, tamper with, advance, set back, disconnect, or fail to connect, an odometer of a motor vehicle, or cause any of the foregoing to occur to an odometer of a motor vehicle with the intent to alter the number of miles registered on the odometer.
 * * *
 (C) Nothing in this section prevents the service of an odometer, provided that after the service a completed form, captioned "notice of odometer repair," shall be attached to the left door frame of the motor vehicle by the person performing the repairs. The notice shall contain, in bold-face type, the following information and statements: [Sticker requirements omitted.]
 * * *
 (E) If after the service of an odometer, the odometer can be set at the same mileage as before the service, the odometer shall be adjusted to reflect that mileage registered on the odometer of the *Page 16 motor vehicle before the service. If the odometer cannot be set at the same mileage as before the service, the odometer of the motor vehicle shall be adjusted to read "zero."
 {¶ 34} The evidence presented at trial established that the Prelude's odometer had over 238,000 miles on it from its previous owners but that when Burrell sold the vehicle, the odometer had approximately 131,000 miles. Logically, it is evident that the odometer had to have been changed, tampered with, or replaced.
 {¶ 35} However, Burrell was never indicted for or convicted of violating R.C. 4549.42. Testimony was presented at trial concerning the statutory procedures that should be followed when an odometer is replaced, but the fact that none of the procedures indicating a legitimate odometer replacement or repair were followed in this case was simply further evidence of the fact that Burrell had to realize that the odometer had been modified and that he was either directly or indirectly responsible for altering the vehicle's reported mileage. The trial judge explained that the fact that there was no sticker on the door was just an additional "factor," together with the other evidence, that indicated Burrell's guilt. Thus, there is no merit to Burrell's claim that the judge mistakenly applied the statute referencing the odometer repair or replacement sticker requirement. *Page 17 
 {¶ 36} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 SHAW, P.J., and PRESTON, J., concur.
[1] Courtney and Bowersock testified that they knew that the car's door had been replaced and the purchase order document did have a notation that "this auto was damaged repaired on left side."
[2] We note that the trial judge stated from the bench that the "verdict" was guilty and the Judgment Entry states the same. (Trial Tr. p. 137, May 2007 Judgment Entry). Technically, a verdict is rendered only after a trial by jury. Crim.R. 31. At a bench trial, the trial court renders a general finding. Crim.R. 23(C).
[3] No one from Perry Auto testified at trial and there was no discussion or evidence presented as to any culpability on the part of Perry Auto. The issue was not raised as to Perry's responsibility to provide a correct odometer certification. In any case, R.C. 4549.46(B) states that "No dealer or wholesaler who acquires ownership of a motor vehicle shall accept any written odometer disclosure statement unless the statement is completed as required by section 4505.06 of the Revised Code." Accordingly, Burrell had a responsibility to insist that the odometer disclosure statement was completed before he accepted the vehicle. *Page 1